FILED

SEPTEMBER 11, 2009

KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| GRACE HOLMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:06-CV-0238 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## TO REVERSE THE DECISION OF THE COMMISSIONER

Plaintiff GRACE HOLMAN brings this cause of action pursuant to 42 U.S.C. § 405(g),

seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social

Security (Commissioner), denying plaintiff's application for disability insurance benefits (DIB) and

supplemental security benefits (SSI).  Both parties have filed briefs in this cause.  For the reasons

hereinafter expressed, the undersigned United States Magistrate Judge recommends the

Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED,

and the case REMANDED for further administrative proceedings.

I.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to

determining whether substantial evidence exists in the record, considered as a whole, to support the

Commissioner's factual findings and whether any errors of law were made.  *Anderson v. Sullivan*,

887 F.2d 630, 633 (5th Cir. 1989).  To determine whether substantial evidence of disability exists,

four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of

treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4)

claimant's age, education, and work history.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)

(citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)).  If the Commissioner's findings are

supported by substantial evidence, they are conclusive, and the reviewing court may not substitute

its own judgment for that of the Commissioner, even if the court determines the evidence

preponderates toward a different finding.  *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).

Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v.*

*Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices"

or "no contrary medical evidence" will produce a finding of no substantial evidence.  *Hames v.*

*Heckler*, 707 F.2d at 164.  Stated differently, the level of review is not *de novo*.  The fact that the

ALJ <u>could</u> have found plaintiff to be disabled is not the issue.  The ALJ did not do this, and the case

comes to federal court with the issue being limited to whether there was substantial evidence to

support the ALJ decision.

II.

<u>ISSUES</u>

This case involves a determination at Step Four of the five-step sequential analysis.

Consequently, this Court is limited to reviewing whether there was substantial evidence to support

the administrative finding that plaintiff retained the ability to perform her past relevant work as a

reporter, and whether the proper legal standards were applied in making this determination.

Plaintiff appears to present the following issues:

    1.      The ALJ committed reversible legal error by applying the wrong legal

standard to determine plaintiff has no "severe" mental impairments;

2.      There is no substantial evidence to support the ALJ's RFC finding that plaintiff can perform light work; and

3.      The ALJ committed reversible error by failing to properly analyze the mental and physical demands of plaintiff's PRW as a "reporter."

III.
MERITS

A.
Ground 1:  The Proper Standard for Determining the Severity of an Impairment

Plaintiff argues the ALJ committed reversible error in finding plaintiff had no "severe" mental impairments.  Specifically, plaintiff argues the ALJ cited the incorrect standard for evaluating severity.

At step 2 of the sequential analysis, the ALJ must decide whether a claimant's impairment is "severe," irrespective of age, education and work experience.  Social Security Regulations define the term "severe impairment":

> If you do not have any impairment or combination of impairments which *significantly limits* your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

20 C.F.R. §§ 404.1520(c) & 416.920(c) (emphasis added).  In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit determined the "significantly limits" language of the Social Security Regulations was inconsistent with the statutory language and the legislative history of the Social Security Administration Act.  *Id.* at 1104.  The Court warned it could not condone the Commissioner's use of the severity regulation to systematically deny benefits to claimants who otherwise satisfied the statutory criteria.  *Id.*  Although the Court recognized in *Stone* that the ALJ was entitled to follow a sequential process that disposed of appropriate cases at an early stage, the

Court also recognized it was impermissible to conduct the evaluation in such a manner as to deny

benefits to individuals who were, in fact, unable to perform "substantial gainful activity."  *Id.* at

1103.  The Fifth Circuit instructed as to the proper standard to be used in determining whether a

claimant's impairment was severe:

> [A]n impairment can be considered as not severe <u>only if</u> it is a *slight abnormality*
> [having] such *minimal effect* on the individual that it would *not be expected to
> interfere with* the individual's *ability to work*, irrespective of age, education or work
> experience.

*Id.* at 1101 (emphasis added) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984)).  In

disapproving the Commissioner's use of the severity regulation,[1] the Court held it would "*assume*

*that the ALJ and the Appeals Council applied an incorrect standard* to the severity requirement

<u>unless</u> the *correct standard is set forth* by reference to this opinion or another of the same effect . . .

."  *Id.* at 1106.

> In setting out the five-step sequential evaluation process in her decision, the ALJ explained:
>
> A person who does not have a severe impairment will not be found to be disabled. A
> "severe" impairment is a physical or mental impairment, which significantly limits
> one's ability to do basic work activities, and which has lasted, or is reasonably
> expected to last, twelve consecutive months, or which is reasonably expected to
> result in death [20 C.F.R. § 404.1520(c)].  (Tr. 15).

The ALJ then addressed the various criteria utilized in the evaluation of mental impairments and

their impact on an individual's ability to perform work activities.  The ALJ then noted:

> The Administrative Judge has carefully considered the provisions of Social Security
> Ruling 96-1p through Ruling 96-9p and their underlying regulations, and they have

---

[1]Despite the Court's disapproval, the Court did not go so far as to hold that the severity regulation was facially invalid.
Although the severity regulation, if taken literally, is inconsistent with the conclusion in *Stone* that a claimant need only prove
that his or her impairment is something more than a slight abnormality, the Court did not, in *Stone* or thereafter, expressly reject
the validity of the severity regulation.  In fact, the Fifth Circuit, like other circuits, conceded that the Commissioner may require
the claimant to make a *de minimis* showing that her impairment is severe enough to interfere with her ability to work.  *See
Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986) (acknowledging that "Stone does not require a wholesale remand of all
severity cases"); *see also McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118, 1122 (1st Cir. 1986)
(recognizing the validity of a *de minimis* screening device).

been applied, where appropriate, in resolving these issues.  All evidence has been
considered for relevance and credibility, and has been appropriately weighed,
whether or not it is specifically discussed.  (Tr. 15)

In the section of her opinion evaluating the evidence of record, the ALJ explained she was

proceeding to step two to determine whether plaintiff had a medically determinable impairment, or

combination of impairments, which were "severe."  The ALJ then stated:

A medically determinable impairment or combination of impairments is "severe" if it
significantly limits an individual's physical or mental ability to do basic work
activities (20 C.F.R. § 404.1520).  (Tr. 17).

The ALJ found plaintiff's physical impairments, *i.e.*, status-post lacunar infarct, hypertension, and

history of catheterization with left ventrical hypertrophy, to be severe.  The ALJ further determined

plaintiff had no more than mild limitations in mental functioning and, therefore, plaintiff's mental

impairments were not severe.  (Tr. 19).

Plaintiff argues the ALJ committed legal error in evaluating the severity of her alleged

mental impairment because the ALJ did not utilize the Fifth Circuit's interpretation of the standard

for analyzing severity set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) and *Loza v. Apfel*,

219 F.3d 378 (5th Cir. 2000).  Plaintiff maintains the ALJ only cited the incorrect regulatory

standard for severity in finding plaintiff had no severe mental impairments, failed to set forth the

appropriate standard by referring to *Stone* or another Fifth Circuit opinion to the same effect, and

failed to expressly state the Fifth Circuit's construction of the severity regulation was used.

Plaintiff concludes it must then be assumed the ALJ applied the wrong standard and the decision

must be vacated and remanded for reconsideration of whether plaintiff has a severe mental

impairment, applying the correct Fifth Circuit standard for severity.  As set forth above, the

incorrect severity standard was recited by the ALJ twice.

As present Fifth Circuit case law stands, an ALJ's reference to *Stone* or other Fifth Circuit

precedence to the same effect, or his express statement that the construction the Fifth Circuit gives to 20 C.F.R. § 404.1520(c) was used, is sufficient to avoid a presumption that an incorrect standard as to the severity requirement was used.  Here, the ALJ did not specifically reference *Stone* in her decision, nor did the ALJ use the language from *Stone* in defining what constitutes a severe impairment.  Defendant counters plaintiff's claims, directing the Court to Social Security Regulation 96-3, which ruling does appear to adopt the *Stone* language.  Defendant further argues that since the ALJ continued past step two and determined the case at step four, any failure to apply the *Stone* standard is harmless.

Defendant's second argument is inapplicable to the facts of this case.  While it is true that the ALJ proceeded past step two with respect to the non-mental impairments found to be severe, the ALJ did not proceed past step two with respect to plaintiff's mental impairment.  In a multi-impairment case, proceeding past step two on impairments found to be severe, but not proceeding past step two on the impairment or impairments found not severe, does not cure any error which may have occurred.

Defendant's reference to the applicable Social Security ruling recited by the ALJ is more persuasive.  The closest the ALJ came to complying with *Stone* was to state she had carefully considered and applied SSR 96-1p through 96-9p in resolving the mental issues raised in this case.  This sequence of rulings included SSR 96-3p which addresses the evaluation of whether an impairment is "severe" at step 2 and requires an assessment of the functionally limiting effects of an impairment on an individual's ability to do basic work activities.  Under SSR 96-3p, an impairment is considered "not severe" only if it is a slight abnormality that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner.  SSR 96-3p basically adopts the *Stone* standard for severity as Agency

policy.  The question becomes whether the ALJ's reference to her consideration of the sequence of SSR rulings which included SSR 96-3p can be construed as a statement by the ALJ that she considered plaintiff's mental impairments under the appropriate *Stone* standard and, if so, no presumption of an application of the improper standard would attach.

Although the language of *Stone* is quite explicit and easy to follow, for some reason such was not done and, instead, the ALJ referenced the Social Security Regulation rulings which contained the *Stone* language.  Consequently, the Court is left to speculate as to which standard of severity the ALJ actually used and whether the ALJ, in citing the sequence of Social Security rulings, was actually referring to the *Stone* language.

In this case, however, the ALJ's additional analysis of plaintiff's mental impairment, resulting in her finding there was no mental impairment with respect to three areas and only a mild impairment with respect to the fourth area was, in the opinion of the undersigned, sufficient to avoid reversal.  The ALJ considered plaintiff's mental impairments under 20 C.F.R. § 404.1520a, utilizing that section's "special technique" for identifying mental impairments and rating the degree of functional limitation resulting from the mental impairment with regard to activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  The ALJ determined plaintiff had <u>no</u> restrictions on activities of daily living; <u>no</u> difficulty in maintaining social functioning; <u>no more than mild</u> difficulties in concentration, persistence or pace; and <u>no</u> episodes of decompensation.  These findings make clear the ALJ found plaintiff's mental impairments were less than a slight abnormality having such minimal effect on the plaintiff that they would not be expected to interfere with her ability to work.  Plaintiff's first ground should be DENIED.

B.

Ground 2:  RFC Finding

By her second ground, plaintiff argues the ALJ's finding as to her RFC is not supported by substantial evidence.  Specifically, plaintiff contends the medical evidence does not support the ALJ's finding that plaintiff "could stand and/or walk for six hours in a work day" with no limitations.  (Tr. 22, 23).  Defendant contends the ALJ properly assessed plaintiff's RFC in accordance with the pertinent regulations and SSRs by considering all the relevant evidence.  Both plaintiff and defendant have summarized the medical evidence indicating any limitations and/or non-limitations of plaintiff's ability to stand and/or walk, as well as plaintiff's hearing testimony.

Plaintiff argues the medical evidence of record confirms the persistence of symptoms limiting walking and standing.  Plaintiff contends the only medical evidence which supports the ALJ's finding that plaintiff could stand and/or walk for six hours in a work day as required for the full range of light work is that of the non-examining medical expert (ME) who testified by telephone at the hearing.  Plaintiff argues that even though the ALJ did note the February 17, 1998 opinion of the state agency's reviewing physician that plaintiff could stand and/or walk for about 6 hours in an 8-hour workday but should avoid concentrated exposure to uneven surfaces and that a cane might "be helpful for her right now in the winter months," the ALJ summarily disposed of even those minimal limitations by opining that plaintiff's medical condition which necessitated such restrictions initially had basically resolved.  (Tr. 22, 123, 126).  Plaintiff argues the opinion of the ME, a non-examining expert, was the sole evidence supporting the ALJ's stand/walk finding and such does not constitute substantial evidence when contradicted by medical evidence from treating/examining sources.

Defendant argues the ALJ, applying the appropriate directives and SSRs, and considering all

the evidence, weighing such evidence and making credibility determinations, properly determined plaintiff retained the RFC to perform a full range of light work.  Defendant contends substantial evidence supports this RFC assessment.  Defendant acknowledges plaintiff initially had limitations after suffering a stroke in September 1997, but that subsequent medical records reflected plaintiff's condition improved.  Defendant argues that along with the opinion of at least one of plaintiff's treating physicians [Dr. Sable], the ALJ's RFC determination is supported by the ME who testified at the hearing that, "[a]s far as the stroke is concerned, she basically completely recovered from that.  The minimal limitations that she had with that were – well, were very minimal and would not effect [sic] her ability to function."  *See* Defendant's Brief at 17; Tr. At 344.  Defendant also asserts the ALJ was not bound by the opinions of the state agency non-examining medical consultants that plaintiff had some mild postural, manipulative and environmental limitations, and notes that despite these minimal limitations, the consultants still concluded plaintiff was not disabled.  Defendant also argues the ALJ properly considered the one-time consultative examinations of plaintiff dated June 21, 1999 and August 23, 2005, noting the physicians' one-time exam of plaintiff hardly qualified them as treating physicians, and noting the ALJ is entitled to determine the credibility of medical experts and weigh their opinions accordingly.

In addition to her first argument regarding her walk/stand ability, plaintiff also argues the ALJ's finding that plaintiff had no manipulative or other upper extremity limitations beyond a 20-pound lifting limit is not supported by substantial evidence.  Plaintiff contends the testimony of the non-examining ME is the only evidence supporting the ALJ's finding that plaintiff had no limitations (other than a weight limitation on lifting) on the use of her upper extremities.  Plaintiff argues the ALJ's decision that her activities did not indicate problems with fine finger movement and recording activities was contradicted by plaintiff's testimony.  Plaintiff also challenges the

ALJ's decision to disregard the state agency consultant's opinion that reaching and handling were limited on the basis that plaintiff's medical condition which necessitated those restrictions had basically resolved.  Plaintiff argues this finding by the ALJ  was directly contradicted by the August 2005 opinion of an examining physician wherein the physician found plaintiff had "difficulties with fine finger and coordinated movements on the left."  (Tr. 254).  Plaintiff further maintains the attempt by the ALJ to discredit the examining physician's opinion due to the fact that the examination occurred shortly before the hearing and after plaintiff's acknowledgment of the hearing was improper and was not a proper basis to disregard the opinion.  Plaintiff contends this is especially true as the August 2005 opinion was consistent with a June 1999 opinion of another examining physician.  Plaintiff concludes the substantial evidence of record supported a finding that plaintiff <u>has</u> upper extremity limitations, rather than the ALJ's finding that she does not have such limitations, and that since the DOT description of a reporter job requires frequent reaching, handling and fingering, as well as motor coordination, plaintiff is precluded from performing her PRW by her upper extremity limitations.

Plaintiff's treatment history rendered by her two treating physicians from October 1997 to April 1998 does indicate plaintiff was steadily progressing post-stroke.  These records also show plaintiff had limitations with regard to standing/walking and with her upper extremities as a result of her September 1997 cortical infarction.  The report of the one-time examination of plaintiff in June 1999, reflected observations of mild left facial weakness with decreased pinprick sensation, left hip weakness 4 to 4+ (otherwise strength was normal throughout), sensation intact to pinprick testing throughout, reflexes were brisker on the left as compared to the right, slower coordination on the left upper and lower extremity as compared to the right, normal gait, and fair tandem gait forward and backward.  (Tr. 139-40).  The report contained very little new evidence or

observations, and subsequent examinations were to be scheduled only as needed. The physician

assessed plaintiff's condition as mild left sided deficits, impaired balance and coordination, and

fatigue, opining that such impairments affected plaintiff's ability to participate in competitive

employment, particularly news reporting. (Tr. 140).

An August 23, 2005 medical opinion also presented findings more restrictive than those of

the immediate post-stroke medical reports.[2] This report, from Dr. Neiman, a neurologist, reflected

observations of full range of motion in all joints in plaintiff's back and extremities, fluent speech

with normal mood and no mood lability, intact concentration span and memory skills for both visual

and verbal tasks, left facial droop, 4/5 strength in the upper and lower extremities with some

increased tone in the upper and lower extremities, some mild dysmetria on the left, and inability to

tandem walk or walk on her heels and toes, and decreased sensation on the left compared to the

right. (Tr. 253-54). The physician assessed plaintiff's condition as residual dysarthria, a facial

droop, left-sided weakness, difficulties with fine finger and coordinated movements on the left, and

significant difficulties with her strength on the left side. The physician opined plaintiff's signs and

symptoms would not resolve as she had the stroke several years prior to the examination.

There is conflicting medical evidence from treating sources and from non-treating sources.

Evidence from 1999 and 2005 indicates limitations of plaintiff's ability to stand and walk and/or

limitations as to her upper extremities, while there is also earlier evidence (1999) indicating

plaintiff to be recovering from her stroke. The ALJ utilized the ME to assist in clarifying the

medical evidence of record, as well as to give his opinion as to what limitations were supported by

the medical evidence. The ME, however, was only presented with plaintiff's medical records

---

[2]The record does not contain any treatment records from April 1998 to June 1999. Plaintiff indicated, however, that she had authorized the release of her medical records to the SSA, but that her physicians had not received inquiries from the SSA. (Tr. 258).

through June 1999,[3] and critically was not presented with the August 2005 opinion.[4]  Further, the ME's only reference to the June 1999 report was the observation that plaintiff had been discharged from her job due to her inability to work.  (Tr. 343).  Consequently, the ALJ did not have any input from the ME to clarify the discrepancies and his reliance on the opinions of the ME dealt only with the immediate post-stroke records.[5]

At the hearing level, the ALJ bears the responsibility for determining a claimant's RFC.  20 C.F.R. § 404.1546(c).  In making the RFC determination, the ALJ must consider all of the relevant evidence of record, including subjective evidence of a claimant's limitations, 20 C.F.R. § 404.1545(a)(3), and must weigh all of the opinion evidence.  20 C.F.R. §§ 404.1527(d), 416.927(d).  Generally, a treating physician's medical opinion is entitled to controlling weight.[6]  *Id.*; *see also Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

The ALJ's full discussion and analyses of the physician opinions from June 1999 and August 2005 are as follows:

> The claimant had a consultative examination on June 21, 1999.  She was working "very part time" doing freelance reporting.  She was doing volunteer work at the thrift shop and teaching a blind person how to sew.  There was mild left facial weakness to pinprick, some weakness at the left hip, and slower coordination left than right.  The claimant primarily reported fatigue and emotional lability.
>
> . . .

---

[3]The ME was also presented with medical records from 2004 regarding a heart catheterization procedure not relevant to plaintiff's claims of disability in this proceeding.

[4]The VE in this case was called to testify at a supplemental hearing on March 29, 2006, however, the ME was not called at this hearing to evaluate the 2005 medical opinion.

[5]The ME, relying on the fact that there was no data after 1999 concerning plaintiff's condition or limitations as a result of her 1997 stroke, assumed plaintiff "basically completely recovered" from her stroke.

[6]However, a treating physician's opinion as to whether a claimant is disabled is not considered a medical opinion, and, therefore, is not entitled to controlling weight.  20 C.F.R. §§ 404.1527(e), 416.927(e).

In August 2005, shortly before the initial hearing, the claimant went to R. Braden Neiman, a neurologist.  The claimant reported left-sided weakness and speech difficulties.  She had not expressed difficulties with speech at any time previously, and none was apparent at the hearing.  She reported fatigue, weight gain, difficulties sleeping, poor night vision, ringing in the ears, trouble swallowing, joint pain and stiffness, muscle pain, and enlarged heart, nervousness, and depression.  She had full motion in all joints, 4/5 strength, decreased left coordination and sensation, and increased reflexes on the left.  Dr. Neiman mentioned getting a magnetic resonance imaging study of the brain and other testing, but non has been produced.

. . .

The ALJ then stated:

Two examining doctors noted difficulty with competitive work.  This appears to be primarily related to the claimant's reports of fatigue and difficulties with her employer.

One examining doctor noted facial droop and left sided weakness [the 2005 report].  These findings are contrary to less significant findings previously.  As noted above, the claimant alleged these things not previously alleged, such as difficulties sleeping, speech difficulties, problems swallowing, and ringing in the ears.  The examination followed the claimant's acknowledgment of the hearing.

The ALJ did not afford the physicians' 1999 and 2005 medical opinions controlling weight, instead relying on the six (6) months of immediate post-stroke medical records from September 1997- April 1998.  It appears the ALJ determined the 1999 and 2005 physicians' opinions were not reliable medical evidence because they were contrary to the much earlier medical records, contained allegations of impairments plaintiff had not made immediately post-stroke and, with regard to the 2005 opinion, considered it important that the examination was conducted following plaintiff's receipt of notice of the hearing.  In rejecting the opinions, the ALJ noted the physicians were consultative only, examining plaintiff only the one time which formed the basis of the reports.

After reviewing all of the evidence, and fully recognizing the deference given to an ALJ's determinations, there is simply an insufficient record upon which to find plaintiff not disabled at step four.

The ALJ found plaintiff had no limitations whatsoever and was capable of performing the full range of light work.  In support of the determination plaintiff had no limitations, the ALJ cited the medical opinion of Dr. Schmidt who did not personally examine plaintiff but who reviewed some of plaintiff's medical records.  In summary, Dr. Schmidt's opinion was that most individuals recover from what he described as a small stroke do not have any residual disabilities (Tr. 345).  Dr. Schmidt indicated the records in this case indicated plaintiff had fully recovered and that there were no records indicating any permanent impairment.  Dr. Schmidt stated there was no evidence in the record of any problem since 1999 (Tr. 345).  Dr. Schmidt acknowledged that in March 2004, plaintiff had a cardiac catheterization  and that the March 2004 were the "last records."  (Tr. 343).

The defendant secretary submits that the ALJ properly accepted Dr. Schmidt's medical opinion over Dr. Neiman's 2005 examination findings.  It is clear, however, that Dr. Schmidt did not have Dr. Neiman's findings before him.  Consequently, assuming, for purposes of argument, that it is proper for the ALJ to accept the opinion of a non-examining medical advisor over the opinion of an examining consultative physician, the non-examining medical advisor at least had to have been confronted with the 2005 findings by Dr. Neiman before he could reject them or determine they were without merit.  It cannot be assumed Dr. Schmidt would disagree with Dr. Neiman.  The medical expert could have reviewed Dr. Neiman's medical records, his findings and conclusions, and agreed with them.  The medical expert assumed plaintiff had had no problems whatsoever with her stroke post 1999, when in fact, there were medical records in evidence that plaintiff continued to have difficulties into 2005.  While there is certainly a possibility the medical expert could have found Dr. Neiman's 2005 findings to be flawed, the medical expert could also, as set forth above, have accepted such findings.

If the ALJ had felt the medical records from 1997 through 1999 constituted a sufficient

picture for adjudication of the case, it would not have been necessary to even utilize the medical expert.  Further complicating this issue is that the ALJ appears to make a medical determination in finding plaintiff not disabled and in rejecting Dr. Neiman's findings.  The ALJ determined that although plaintiff initially seemed to indicate she was improving, she evidently alleged a "relapse" due to the stroke.  The ALJ found a relapse does not occur with a stroke.  The ALJ did not reference any doctor or medical record documenting such a determination and this Court has not been cited any authority for it.  If, in fact, the record contains medical evidence that a relapse does not occur with a stroke, the undersigned has been unable to find it in the administrative record.  It is not clear what may have happened between 1999 and 2005.  The undersigned does not know whether plaintiff fully recovered, suffered a relapse, or whether some other factor caused plaintiff's impairments to continue to exist in 2005 as determined by Dr. Neiman.  There may have been an intervening episode, or there may have been none.  What is in the record is that in 2005, a neurologist found plaintiff to have post stroke limitations as a result of her 1997 stroke.  Those findings were never reviewed by a disability reviewing physician, by the medical expert, or by any physician.

To the extent defendant urges the case could still be affirmed based upon Dr. Sable's 1999 findings, those findings are not determinative.  Dr. Sable treated plaintiff over a period of time following her stroke.  Although he found her to improve over time, on February 2, 1998, he found her to continue to have residual left hemiparesis (Tr. 106).  On February 17, 1998, in a phone call with the Helena Disability Bureau, he advised he "did not feel plaintiff disabled at this time."  He further advised "I feel she could work as a reporter/journalist . . . ."  On March 2, 1998, however, he found she continued to have "residual left hemiparesis," (Tr. 100) and, on April 6, 1998, found "residual mild left hemiparesis with some balance difficulty."  (Tr. 101).  Those findings post

February 2, 1998, do not show full recovery.

Secondly, as the defendant regularly points out, a disability determination by a doctor is not binding and determinations by physicians finding a plaintiff to be disabled are routinely rejected by the defendant.  Further, this is a case where the evidence shows plaintiff attempted a return to her past relevant work as a reporter, was unsuccessful, and was not able to return to that work through 2006.  In 2005 she was found by a physician to have permanent limitations which he did not expect to resolve.  Based upon the facts set forth above, it is the opinion of the undersigned that this case must be reversed and remanded for additional findings, including, but not limited to, having a medical expert review Dr. Neiman's findings or having plaintiff submit to a consultative examination in order to determine whether plaintiff does in fact have what would be considered as permanent limitations from her stroke or whether plaintiff has in fact completely recovered.

C.
Ground 3:  Past Relevant Work

Plaintiff next argues the ALJ committed reversible legal error by failing to properly analyze the mental and physical demands of plaintiff's PRW as a "reporter."  Citing *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994), plaintiff contends that in deciding whether a claimant can perform certain past relevant work, an ALJ must (1) directly compare the claimant's remaining functional capacities with the physical and mental demands of her previous work; and (2) make clear factual findings on that issue.  Plaintiff asserts the ALJ may not rely on generic classifications of previous jobs.

In *Latham*, the Court remanded the case on the basis of the production of new material evidence.  The Court then noted the ALJ found the claimant had an RFC for light and medium work and decided he, therefore, could perform his past employment as sales manager and sales person,

since those jobs required light to medium exertion capacity.  The *Latham* court held the categories of light and medium were generic, only referred to exertional capabilities, and did not address mental or emotional barriers to a return to previous employment.  In *Latham*, the ALJ had concluded the claimant suffered from mental impairments but did not explain how those impairments did not prevent the claimant from returning to his previous people-oriented employment.

Here, the ALJ's comparison, in his decision, of plaintiff's RFC with the physical and mental demands of her past work as a reporter was as follows:

> The vocational expert testified that the claimant's past relevant work as a reporter (DOT Code # 131.262-018) was light work.  The claimant's residual functional capacity allows her to return to her past relevant work as a reporter (Exhibit B3D and 3E).

Plaintiff argues the ALJ both (1) failed to consider and make any clear factual findings as to the mental and manipulative demands of plaintiff's reporter work, and (2) improperly relied upon the generic classification of that work as "light," in violation of the *Latham* mandate.  Plaintiff concludes the finding that she can perform the job of a reporter should thus be vacated.

In *Latham*, the Court remanded the case on the basis of the production of new material evidence, not the failure of the ALJ to adequately compare the plaintiff's RFC with his physical and mental demands of his previous work and make clear findings on that issue, or the ALJ's reliance on a generic classification of the plaintiff's previous job.  Further, the ALJ in *Latham*, although having found the plaintiff suffered from several mental deficiencies, instead relied only on the generic <u>exertional</u> levels of the previous jobs to determine the plaintiff could still perform those jobs and did not address plaintiff's mental deficiencies and how they may impact upon a return to the previous employment.  In this case, the ALJ found plaintiff to not suffer from any mental

deficiencies.

Secondly, plaintiff has the burden, at Step Four, of demonstrating she is unable to perform her past relevant work.  Here, a VE testified and specifically referenced the DOT to describe plaintiff's past work as a reporter as light work and cited the provision of the DOT which provided a detailed description of a reporter job.  (Tr. 347).  Moreover, in the Vocational Report plaintiff submitted in support of her application for benefits, plaintiff specifically described her job as a newspaper reporter/editor as requiring 2 hours of walking per day, 1 hour of standing per day, 5 hours of sitting per day, occasional lifting, and little lifting of up to 10 lbs., and requiring the use of a computer for setting type and page makeup.  (Tr. 72).  This specific description given by plaintiff of her past reporter work fits within an RFC for light work.  The ALJ was entitled to rely upon these descriptions of plaintiff's PRW to determine plaintiff, with her RFC, was not prevented from performing her PRW as a reporter.[7]  The ALJ did not commit reversible legal error in this instance as the mental and physical demands of plaintiff's PRW as a "reporter" was before the ALJ, and said physical and mental demands of her previous work fit squarely within plaintiff's remaining functional capacities.  If the ALJ's determination that plaintiff could perform the entire range of light work is valid, then the ALJ did not commit reversible legal error, and plaintiff failed to satisfy her burden at step four to establish disability.  If, however, after remand, it is determined that plaintiff could not perform the full range of light work because of permanent post stroke limitations, the determination that plaintiff could return to her PRW would have to be revisited.

---

[7]As the ALJ "did not find any of the additional limitations asked of the vocational witness to be supported by the evidence," any VE testimony incorporating the hypothetical limitations was not binding.

V.
CONCLUSION

It is the opinion and recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability and SSI benefits be REVERSED and the case REMANDED for further administrative proceedings consistent with this Report and Recommendation.

VI.
RECOMMENDATION

It is the opinion and recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of benefits be REVERSED.

VII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 11th day of September 2009.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\* <u>NOTICE OF RIGHT TO OBJECT</u> \***

Any party may object to these proposed findings, conclusions and recommendation.  In the

event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D).  When service is made by mail or electronic means, three (3) days are added after the prescribed period.  Fed. R. Civ. P. 6(e).  Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Court Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).